Argued March 8, affirmed July 31, 1962

# STATE OF OREGON (DEPARTMENT OF FINANCE AND ADMINISTRATION) *v.* SHINKLE

373 P. 2d 674

*Mallory C. Walker,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs was Robert Y. Thornton, Attorney General, Salem.

*Reginald S. Williams,* Salem, argued the cause for respondent. On the brief were Osterman & Williams.

Before McALLISTER, Chief Justice, and ROSSMAN, WARNER, PERRY, SLOAN, O'CONNELL and GOODWIN, Justices.

O'CONNELL, J.

This is an action brought by the state of Oregon to recover for damages to one of its motor vehicles which, while being driven by a state employee, was involved in a collision with a motor vehicle driven by defendant. The complaint alleged that defendant was negligent in various particulars. Defendant's answer alleged that plaintiff, through the conduct of its employee, was contributorily negligent. Plaintiff interposed a demurrer to this defense relying upon the doctrine of sovereign immunity. The trial court overruled the demurrer. When all of the evidence was in, both sides moved for a directed verdict. The court entered judgment for defendant, basing its decision on the ground that the negligence of plaintiff's employee was imputable to plaintiff and, therefore, barred plaintiff's recovery.

The sole question on appeal is whether a defendant, when sued by the state, can set up the defense of contributory negligence by imputing to the state the negligence of its employee.

■■ We begin with the established doctrine that the state of Oregon is not subject to suit except as the

legislature has otherwise provided. As we recently noted in *Vendrell v. School District No. 26C*, 226 Or 263, 278-279, 360 P2d 282, 289 (1961), "the doctrine of sovereign immunity exists in this state, not as the creation of the courts, but as a constitutional principle chosen by the people and which is subject to change only by general law."[1] Since we, as a court, are powerless to abolish the principle of sovereign immunity, little good would be served by re-examining the cases and the scholarly comments on the subject, almost all of which conclude that the principle should be abolished.[2]

Defendant does not urge that the doctrine of sovereign immunity be abolished in this state; he contends, however, that the state, in seeking the aid of the court, has waived its right to claim immunity. More specifically, the contention is that when the state comes into court, not as a defendant but as a plaintiff, and voluntarily seeks to recover damages for injury to its property, it waives its immunity and subjects itself to any defenses which would be available against a private suitor.

The argument is not novel, there being substantial authority for the view that the state lays aside its immunity when it voluntarily places itself in the

---

[1] Article IV, § 24, Oregon Constitution, provides as follows:
"Provision may be made by general law, for bringing suit against the State, as to all liabilities originating after, or existing at the time of the adoption of this Constitution; but no special act authorizeing (sic) such suit to be brought, or making compensation to any person claiming damages against the State, shall ever be passed."

[2] "* * * [N]early every commentator who considers the subject vigorously asserts that the doctrine of sovereign immunity must go." Davis, Tort Liability of Governmental Units, 40 Minn L Rev 751, 752 (1956).

position of a suitor, thus entitling the defendant to assert contributory negligence as a defense.[9]

The rationale of the cases supporting this position is the implied waiver of immunity by the state or other governmental unit bringing the action, the opinions generally containing overtones to the effect that it would be unfair to permit the state to set up the defense of contributory negligence when it is sued but to deny the same defense to a private suitor in an action brought by the state. Illustrative of the cases expressing this point of view is *United States v. Moscow-Idaho Seed Co.*, 92 F2d 170, 173 (9th Cir 1937) where the defense of contributory negligence was raised in an action by the United States to recover damages to one of its automobiles involved in a collision. There the court said:

> "When the United States comes into court and institutes a suit for redress, not based on any infringement of its sovereignty and not for any violation of its governmental prerogatives, and submits a claim wholly in the nature of a private litigant, it, by implication, waives any immunity as sovereign and its adversary is entitled to set up any defense which would be available to him were his opponent another citizen instead of the government."

*United States v. The Thekla*, 266 US 328, 45 S Ct 112, 69 L Ed 313 (1924) is relied upon by defendant for the same proposition. In that case the United States brought an action in admiralty to recover damages to one of its ships involved in a collision with a ship owned by the defendant. The defendant filed a

---

[9] Cases are collected in Annotation: Contributory negligence as defense to action by state, United States, municipality, or other governmental unit, 1 ALR2d 827 (1948).

counterclaim alleging damages to its own vessel. As a defense against the counterclaim the United States asserted sovereign immunity. The court, speaking through Mr. Justice Holmes, said:

"* * * When the United States comes into Court to assert a claim it so far takes the position of a private suitor as to agree by implication that justice may be done with regard to the subject matter. The absence of legal liability in a case where but for its sovereignty it would be liable does not destroy the justice of the claim against it." 266 US at p. 339.

Although the foregoing language is broad enough to cover all cases in which cross-claims or defenses are asserted by a defendant in an action by the United States, the subsequent cases decided by the United States Supreme Court make it clear that the theory of waiver recognized in *The Thekla* is of limited application. In *United States v. Shaw*, 309 US 495, 502-503, 60 S Ct 659, 84 L Ed 888 (1940), where a cross-claim was made against a probate claim filed by the United States, the court distinguished the type of proceeding in *The Thekla,* noting that it involved an admiralty proceeding in rem in which the claims of the owners of the two vessels could not be regarded separately. The court said:

"The Thekla turns upon a relationship characteristic of claims for collision in admiralty but entirely absent in claims and cross-claims in settlement of estates. The subject matter of a suit for damages in collision is not the vessel libelled but the collision. Libels and cross-libels for collision are one litigation and give rise to one liability. In equal fault, the entire damage is divided. As a consequence when the United States libels the vessel of another for collision damages and a cross-libel is filed, it is necessary to determine the cross-

libel as well as the original libel to reach a conclusion as to liability for the collision. That conclusion must be stated in terms of responsibility for damages."[④]

The court further said (p. 504) that "to permit a demand in set-off to become the foundation of a judgment would be the same thing as sustaining the prosecution of a suit."

The defense of contributory negligence in the case at bar is not, it is true, a cross-claim as in *United States v. Shaw*, supra. On the other hand, it is not a part of a proceeding in rem as in *The Thekla*. The defense of contributory negligence relied upon by the defendant, in effect, simply asserts that the state's employee was negligent. Although the collision in the present case is physically an integral event, as in *The Thekla*, the subject matter of the action is not the collision as it is where the proceedings are in rem—the legal liability of the defendant and the legal liability of the state's employee are separate and distinct. Unless the state is in some way bound by the negligent acts of its employee, it may treat the conduct of its employee and the defendant just as it

---

[④] In United States v. Shaw, 309 US 495, 503, 60 S Ct 659, 84 L Ed 888, 893 (1940), the fact that the United States had sought recovery through the use of the probate court was not regarded as an implied waiver of sovereign immunity. The court said:

"The objection to a suit against the United States is fundamental, whether it be in the form of an original action or a set-off or a counterclaim. Jurisdiction in either case does not exist unless there is specific congressional authority for it." See also, Mewett, Procedural Aspects of Sovereign Immunity, 28 U Cinn L Rev 271, 277 (1959), where the limited application of the rule in The Thekla is recognized: "However, since 1940 [citing United States v. Shaw, 309 US 495, 84 L Ed 888; United States v. U. S. Fidelity & Guaranty Co., 309 US 506, 60 L Ed 653] it is clear that this rule is limited to the peculiar facts arising in admiralty in rem proceedings, and is not applicable to civil actions."

534

would treat the conduct of any two strangers who caused damage to its property.

In some cases it is held that the state is immune from suit (or defense) because the doctrine of respondeat superior does not apply in the relation of a governmental body to its servants.[9] The rationale of these cases seems to be that since the state or other governmental unit acts only for the public and receives no special benefit from the performance of public services, the employees who carry out governmental functions are not agents of the state in the usual sense in which the concept of agency is applied in private employment.[10] But whether or not the doctrine of respondeat superior is regarded as being applicable to public employment, the basic problem is the same, that is, whether as a matter of policy the negligence of the state's servants should be imputed to it.

Article IV, § 24, Oregon Constitution, clearly ordains that where the action is brought against the state the negligence of the state's servants will not be imputed to the state unless the legislative assembly

[9] See e.g., Miller v. Layton, 133 NJL 323, 44 A2d 177, 1 ALR2d 825 (1945); Reilly v. Mayor, Etc., of City of New Brunswick, 92 NJL 547, 108 A 107 (1919); Condict v. Jersey City, 46 NJL 157 (1884).

[10] "Municipal corporations are engaged in the performance of public services, in which they have no particular interest, and from which they derive no special benefit in their corporate capacity. The persons employed by them in the rendering of such services act as public servants charged with a public duty. They are mere agencies, or instrumentalities by which such duties are performed, and the doctrine of 'respondeat superior' does not apply to such employment." Paterson v. Erie R. R. Co., 78 NJL 592, 593, 75 A 922 (1910).

Municipal corporations are now liable for negligent acts of commission as distinguished from acts of omission by employees in New Jersey in the light of a recent case. McAndrew v. Mularchuk, 33 NJ 172, 162 A2d 820 (1960).

elects to permit it. Our constitution does not, however, contain any provision relating to the state's immunity where the suit is brought by the state rather than against it. It is possible that the policy which prompted the people to prohibit suits against the state in the absence of legislative authorization is also applicable where a defense is set up against the state in an action brought by it. If that were the case, of course, the constitution should be construed to bar defenses as well as suits. However, we do not know what considerations led the people to adopt Article IV, § 24.

It has been suggested that the consideration which prompted this limitation was the fear that unlimited liability of the state for the torts of its servants might constitute too heavy a drain upon public funds. If that were the basis for the constitutional limitation, the reason for insulating the state from the negligence of its servants would apply with equal force whether the state were a plaintiff or a defendant. In either case, the treasury is protected to the extent that the state is not made responsible for the negligence of its servant. The same end is served whether the treasury is preserved by barring a third person's claim against the state or by imposing the cost of repairing state property upon a negligent defendant rather than upon the state.

But we do not know whether Article IV, § 24 was adopted by the people simply to protect the state's funds. It is possible that the constitutional proscription was designed to protect public officers from the harassment of suit in the conduct of the state's business rather than to safeguard the treasury. Or it is possible that the drafters of this section of the constitution accepted the notion derived from the early law

that the "sovereign can do no wrong" and delegated to the legislature the power to lift the immunity simply as a matter of noblesse oblige. The point is that, being forced to speculate on the purpose which generated the enactment of Article IV, § 24, we are entitled to hold the constitutional provision within the limits which spell the most desirable policy with respect to the state's immunity.

It may be unfair to permit the state to carry on its activities without paying for the damage inflicted upon others by its servants acting within the scope of their employment, but that is a policy which the state of Oregon has elected to pursue except where modified by statute. Is it inconsistent to say that this policy is applicable where action is brought against the state but that it is not applicable where the action is brought by the state? In a few cases it is held that consistency demands the same recognition of immunity whether the state is the defendant or plaintiff.

In *Paterson v. Erie R. R. Co.*, 78 NJL 592, 75 A 922 (1910), a suit was brought by the plaintiff city to recover damages for injuries received by one of its fire engines which had collided with defendant's train. The lower court nonsuited the plaintiff on the ground that plaintiff was barred by the contributory negligence of its servant in driving the fire engine. Upon appeal it was held that the negligence of the servant was not imputable to the plaintiff city. The court said:

"A person whose negligent act produces injury to another cannot escape liability therefor merely by showing that the injury was contributed to by the careless act of a third person. In order to relieve him from such liability, it must also appear that the act of the third person was one for which the injured party was responsible, under the doc-

trine of 'respondeat superior.' In the absence of proof of that fact, the injured person is entitled to compel both or either of the wrongdoers to compensate him for his injuries." 78 NJL at 593, 75 A 922.

The court held (p. 594) that the negligence of the driver was not chargeable to the plaintiff and that therefore "it no more constituted a bar to plaintiff's right of action against the defendant than the contributing negligent act of any other person, entirely disconnected with the plaintiff, would have done."

The reasoning in the Paterson case was followed in *Miller v. Layton,* 133 NJL 323, 325-326, 44 A2d 177, 1 ALR2d 825 (1945). The court said:

"* * * Is contributory negligence then an 'appropriate' defense in the case before us? We think not. If the state may not be held answerable for the negligence of its servant, the relationship of respondeat superior being nonexistent, it follows that it may not be compelled to suffer property damage caused by defendant's negligence even though its own servant was guilty of contributory negligence."[7]

The view expressed in the New Jersey cases referred to above has been criticized.[8] The contrary view is adopted by most other courts.[9] As we have already indicated, the rationale of the latter cases is

[7] Justice Perskie dissented, stating that he did "not deem it wise to perpetuate the unsound and unjust philosophy upon which that law is based, namely, that the state is above the law." The dissent also felt that the state in seeking recovery "casts aside its shield of immunity."

The Miller case was followed in Gruschow v. New Jersey State Highway Dept., 56 NJS 146, 152 A2d 150 (1959).

[8] Cowan, Reform in the Law of Torts, 14 Rutgers L Rev 356, 369 (1959); Comment, 14 Rutgers L Rev 211 (1959); Note, 15 Rutgers L Rev 98 (1960); 24 Tex L Rev 227 (1946).

[9] 1 ALR2d 827, 828 (1948).

that the state in bringing an action impliedly waives its immunity. The state, it is said, by instituting suit submits its claim as a private litigant and subjects itself to all of the defenses available to such litigants. Frequently this and other similar pronouncements are accompanied by the shibboleth that sovereign immunity may be used as a shield but not as a sword. These are not reasons—they are simply statements of a conclusion.

There is nothing in the nature of things which would suggest that the state impliedly waives its immunity by bringing an action. If the state asserts that it is insulated from the negligence of its servants, it is entitled to rely upon that insulation as strongly when it brings an action as when it defends against an action brought against it; and it is reasonable to assume, therefore, that it does not merely by bringing an action waive that which it is entitled to assert.

■ Moreover, if the concept of waiver is used here in its normal sense, the state agency responsible for instituting the action has no authority to waive the state's immunity in the absence of statutory authorization. The intent to waive the state's immunity must be found in the statutes since it is only the legislative assembly which has been given the authority to waive it.

But we prefer to decide the question, not on the basis of implied waiver, but rather upon the ground that our constitution does not cover the case where the state itself institutes suit. Reason does not compel us to conclude that, because the constitution requires legislative action to lift the state's immunity where suit is brought against it, similar action is necessary where the state is the plaintiff seeking to recover for damages to its property.

Unquestionably, Article IV, § 24, is susceptible to a construction rendering the state immune not only from suit but from defenses as well. But § 24 is also susceptible to a narrower construction limiting the principle of immunity only to those cases where the state is sued. If the protection of public funds were the only grounds upon which to explain the adoption of Article IV, § 24, then perhaps we would be compelled to apply the rule of immunity whether the state was defendant or plaintiff. But, as we have indicated, that is not the only possible ground upon which the constitutional provision can be rested.

■ We are constrained to construe Article IV, § 24 in this strict manner because we believe that such construction comports with sound policy. The doctrine of sovereign immunity is not defensible. It is almost universally criticized.[10] The doctrine should, therefore, be held within the narrowest limits to which the language of Article IV, § 24 is susceptible. Were it not for the fact that the constitution has made provision with respect to governmental immunity, we would, as we indicated in *Vendrell v. School Dist. No. 26C,* supra, be inclined to follow the trend of modern cases and completely abrogate the doctrine. Although we are not free to completely abrogate the doctrine, we can keep it within the narrowest possible bounds consistent with the constitutional provision.

■ There is a particularly good reason for doing so in a case such as the present. Here the state employs the machinery of justice to enforce a claim and yet it seeks to deny the defendant a defense which would be available to him as against any other plaintiff. There is an appearance of unfairness in the state's

[10] See note 2 supra and accompanying text.

position—the spectacle of a participant in a contest rejecting the ordinary rules of the game by which others must play. Although the state's claim of immunity in such a case is logically no more unreasonable than where the state asserts its immunity as a defendant, the fact that the state initiates the proceeding puts the matter in a setting which runs counter to generally accepted notions of fair play. The state as the creator of laws should not present such an image of injustice.[@]

The judgment is affirmed.

McAllister, C. J., dissents.

---

[@] "Our government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example." Brandeis, J., dissenting in Olmstead v. United States, 277 US 438, 485, 48 S Ct 564, 72 L Ed 944, 960, 66 ALR 376 (1927).