CARROLL, DONALD K., Acting Chief Judge.
The plaintiff, a state agency, in an action for damages has appealed from a final judgment entered by the Circuit Court for Escambia County upon a jury verdict for the defendants.
This action grew out of the destruction of a radio tower at the plaintiff’s Highway Patrol station located along a highway in the City of Pensacola in the said county. The said radio tower had collapsed and toppled to the ground when a trailer, attached to a tractor being driven by the de *887 fendant Parker, an employee of the defendant company, struck a guy wire used in support of the tower.
The main question raised by the appellant in this appeal is whether the trial court erred in allowing the jury to consider the affirmative defense of contributory negligence, in view of the fact that the plaintiff is a governmental entity entitled to the immunity of the sovereign.
In their answer to the plaintiff’s complaint the defendants raised contributory negligence as an affirmative defense. The plaintiff moved to strike that defense on the ground that the plaintiff is a government entity and hence immune from such a plea, and the court denied the motion. At the close of the testimony at the trial the plaintiff moved the court to withdraw contributory negligence from the consideration of the jury upon the same ground and for the additional reason that the defendants had failed to establish that affirmative defense, and this motion was likewise denied by the court.
We think that the trial court correctly denied both of the said motions. There was, in our opinion, sufficient evidence adduced at the trial from which the jury, as the triers of the facts, could have concluded that the plaintiff, or its agents or employees, were guilty of negligence that proximately contributed to the destruction of the tower, such as their acts in the positioning of the guy wires and their failure to post warnings concerning low-strung wires in the area used by the vehicles of members of the public. We also hold that, although the plaintiff is a government entity, the defense of contributory negligence may be raised against it when it files an action for damages on account of negligence, as we shall discuss below.
Our immediate reaction to the plaintiff’s contention of its immunity from a defense of contributory negligence, was to reject it as an unjust extension of sovereign immunity, upon the basis of the thought that such immunity is intended to be used “as a shield, but not as a sword.” Upon examining the decisions of other courts upon this question, we have found that many of them have reacted in a similar fashion.
In support of its contention that the defense of contributory negligence cannot be invoked against it, the plaintiff-appellant argues in its brief substantially as follows : the common-law doctrine that the State is immune from suit without its consent obtains in Florida; the plaintiff is a governmental entity of the State; Chapter 321, Florida Statutes, F.S.A., creating and defining the duties of the plaintiff, does not provide that suit may be brought against it, but the doctrine of sovereign immunity does not prevent the State from bringing suit in any court to protect its pecuniary interests or the general public welfare; and Article III, Section 22, of the Florida Constitution, F.S.A., provides that the State Legislature may by general law consent for suits to be brought against the State, yet any such statutes are in derogation of the common law and so should be strictly construed.
The plaintiff-appellant further argues that the Legislature and the courts of Florida have been “extemely cautious in approaching this question,” and cites numerous statutes and decisions as indicative of this trend. The appellant, however, candidly concedes that the Supreme Court of Florida in a few exceptional cases has departed from this trend, such as in Daniell v. Sherrill, Fla., 48 So.2d 736 (1950), allowing equitable estoppel to be raised against the State, and Trustees of the Internal Improvement Fund v. LoBean, Fla., 127 So.2d 98 (1961), allowing legal estoppel to be so raised.
Apparently the precise question before us on this appeal has not hitherto been passed upon by an appellate court of Florida, although in many decisions the courts of other jurisdictions have done so. Those decisions have been collated in an annotation in 1 A.L.R.2d, pages 827-830 on the *888 subject “Contributory negligence as defense to action by state, United States, municipality, or other governmental unit.” The only cases cited therein in support of immunity from the defense of contributory negligence are two cases from New Jersey and one from Georgia. The leading case for this view is Mayor, etc., of City of Paterson v. Erie R. Co., 78 N.J.L. 592, 75 A. 922, 30 L.R.A.N.S., 209 (1910).
On the other hand, the annotator cites decisions from California, Louisiana, Michigan, New Jersey, New York, Texas, Wisconsin, the U. S. Circuit Court of Appeals for the Ninth Circuit, and the U. S. Supreme Court as recognizing the rule allowing the defense of contributory negligence. Incidentally, the writer of the said annotation comments, and we agree, that this view allowing the defense “appears to be the sound and logical one, and the one more likely to do justice.”
The decisions of the courts allowing the defense of contributory negligence against a government entity may be divided into two groups according to their grounds for such adjudication.
Some courts allow the said defense on the theory that the government, when it files an action like a private litigant, impliedly waives any immunity as sovereign and its adversary is entitled to set up any defense available to him if his opponent were another private citizen. The leading case espousing this doctrine is United States v. Moscow-Idaho Seed Co., 92 F.2d 170 (9th Cir. 1937), wherein the United States Circuit Court of Appeals held that the affirmative defense of contributory negligence of an agent of the government might be urged against it in an action it had brought for damages sustained as a result of a collision between its automobile and the defendant’s. The federal court thus set forth its reasoning for so holding:
“When the United States comes into court and institutes a suit for redress, not based on any infringement of its sovereignty and not for any violation of its governmental prerogatives, and submits a claim wholly in the nature of a private litigant, it, by implication, waives any immunity as sovereign and its adversary is entitled to set up any defense which would be available to him were his opponent another citizen instead of the government.”
While in the above case the Circuit Court of Appeals based its holding expressly upon the theory of waiver, it is interesting to note that the said court also recognized the theory of innate justice by stating that the following language used by the United States Supreme Court, speaking through Mr. Justice Holmes, in Luckenbach Steamship Co. v. Norwegian Barque Thekla, 266-U.S. 328, 45 S.Ct. 112, 69 L.Ed. 313 (1924) “aptly applies to the situation in this case”:
“ ‘When the United States comes into Court to assert a claim it so far takes the position of a private suitor as to agree by implication that justice may be done with regard to the subject matter. The absenqe of legal liability in a case where but for its sovereignty it would be liable does not destroy the justice of the claim against it. When the question concerns what would be paramount claims against a vessel li-belled by the United States were the vessel in other hands, the moral right of the claimant is recognized.
i¡í 5¡í i¡í 5};
“The reasons that have prevailed against creating a government liability in tort do not apply to a case like this, and on the other hand the reasons are strong for not obstructing the application of natural justice against the Government by technical formulas when justice can be done without endangering any public interest.”
The second theory for allowing the defense of contributory negligence — the justice of such a holding — is best exemplified by the recent decision of the Supreme Court *889 of Oregon in State of Oregon by and through its Department of Finance and Administration v. Shinkle, 231 Or. 528, 531, 373 P.2d 674 (1962). In that case the State of Oregon had brought an action for damages to its automobile while it was being driven by a state employee. The defendant in his answer alleged that the plaintiff, through the conduct of the said employee, was contributorily negligent. The plaintiff demurred to this defense, relying upon the doctrine of sovereign immunity, and the trial court overruled the demurrer. When all of the evidence was in at the trial, both sides moved for a directed verdict. The trial court then entered judgment for the defendant, basing its decision on the ground that the negligence of the plaintiffs employee was imputable to the plaintiff and, therefore, barred the plaintiff’s recovery. The principal problem confronting the Supreme Court of Oregon was that of construing Article IV, Sec. 24, of the Oregon Constitution, which provides that, where an action is brought against the state, the negligence of the state’s servants will not be imputed to the state unless the legislative .assembly elects to permit it.
In a scholarly opinion the Supreme Court •of Oregon in the said Shinkle case discussed the various authorities in this field. 'That court quoted and discussed the opinion of the U. S. Circuit Court of Appeals in the Moscow-Idaho Seed Co. case, supra. The Oregon court, however, declined to .adopt the theory of waiver and instead gave the following as its reasons for affirming the judgment appealed from:
“We are constrained to construe Article IV, § 24 in this strict manner because we believe that such construction comports with sound policy. The doctrine of sovereign immunity is not defensible. It is almost universally criticized. The doctrine should, therefore, be held within the narrowest limits to which the language of Article IV, § 24 is suceptible. Were it not for the fact that the constitution has made provision with respect to governmental immunity, we would, as we indicated in Vendrell v. School Dist. No. 26C [226 Or. 263, 360 P.2d 282] supra, be inclined to follow the trend of modern cases and completely abrogate the doctrine. Although we are not free to completely abrogate the doctrine, we can keep it within the narrowest possible bounds consistent with the constitutional provision.
“There is a particularly good reason for doing so in a case such as the present. Here the state employs the machinery of justice to enforce a claim and yet it seeks to deny the defendant a defense which would be available to him as against any other plaintiff. There is an appearance of unfairness in the state’s position — the spectacle of a participant in a contest rejecting the ordinary rules of the game by which others must play. Although the state’s claim of immunity in such a case is logically no more unreasonable than where the state asserts its immunity as a defendant, the fact that the state initiates the proceeding puts the matter in a setting which runs counter to generally accepted notions of fair play. The state as the creator of laws should not present such an image of injustice.”
The conclusion and reasoning of the Supreme Court of Oregon in the Shinkle case, as above set forth, seem to us to be applicable to the problem presented in the present appeal, under the rules, laws, and Constitution of Florida
We, therefore, hold that, in order to present a proper image of justice, the state, as the creator of the laws, may be subjected to the defense of contributory negligence in a negligence action instituted by the state in a Florida court.
A second point raised by the appellant in this appeal concerning the sufficiency *890 of certain testimony at the trial is, we find, without substantial merit.
The final judgment appealed from, therefore, must be, and it is, affirmed.
Affirmed.
RAWLS, J., and McCORD, Associate Judge, concur.