MISSOURI HIGHWAY AND TRANS-
PORTATION COMMISSION, Ap-
pellant,

v.

KANSAS CITY COLD STORAGE,
INC., Respondent.

No. WD 52474.

Missouri Court of Appeals,
Western District.

April 22, 1997.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 27, 1997.

Application to Transfer Denied
Aug. 19, 1997.

John M. Cave, II, Kansas City, for Appellant.

Paul L. Wickens, Kansas City, for Respondent.

Before LOWENSTEIN, P.J., and BERREY and EDWIN H. SMITH, JJ.

LOWENSTEIN, Judge.

The issue presented here is: Can a party sued in negligence for damages obtain a comparative fault instruction, and can a jury reduce the damages to the extent of state's fault?

The facts underlying this action for damages involve a March 1990 fire which was started by vagrants and caused property damage to the Kansas City Cold Storage (Cold Storage) facility and the Missouri Highway and Transportation Commission's, (the Commission's), newly constructed 3rd Street southbound off-ramp of the Heart of America Bridge in Kansas City. The Commission filed suit against Cold Storage for damages, and Cold Storage answered alleging contributory negligence and filed a counterclaim for property damage. According to Richard "Smoky" Dyer, a cause and origin expert testifying on behalf of Cold Storage, the fire started on the Commission's property and spread to the Cold Storage loading dock igniting wooden pallets and spreaders stored beneath the ramp. The fire reached a temperature exceeding 1000 degrees. The intense heat damaged the ramp's steel sup-

port girders and it was immediately closed to traffic.

At the jury trial, the Commission alleged that Cold Storage was negligent in stacking its pallets and spreaders directly beneath the off-ramp, and Cold Storage alleged that the Commission was negligent in failing to remove vagrants and combustible materials from its property beneath the bridge where Cold Storage's evidence showed the fire actually started. The case was submitted under a comparative fault theory, and the jury assessed damages of $100,000.00 to the Commission and $4,700.00 to Cold Storage with each party sharing fifty percent of the fault on both claims. Only the Commission has appealed.

The Commission raises three points on appeal: (1) that the trial court erred in giving comparative fault instructions because there was no pleading or evidence to support the submission, and since the Commission has sovereign immunity except as provided in § 537.600, RSMo 1994, it cannot be charged with negligence; (2) that the trial court erred in failing to grant the Commission's motion for judgment notwithstanding the verdict because the evidence of damages presented by Cold Storage's expert was merely speculative; (3) that the trial court erred in permitting Cold Storage's expert to testify regarding the cost of repairs to the highway because he was not properly qualified as an expert.

In order to construct the off-ramp, the Commission purchased a right of way from Cold Storage for the space over its property including the loading dock. The deed to the right of way contained a reservation of rights allowing Cold Storage use of the dock subject to a covenant not to store combustible, flammable or explosive materials under the ramp.

Testimony at trial indicated that both Cold Storage and the Commission were aware that vagrants frequently congregated beneath the overpass and steps were taken to keep vagrants away from the area. Before the 1990 fire, the Commission replaced, at a cost of $4,700.00, a fence around the Cold Storage loading dock which was needed to prevent vagrants and others from trespassing. Both parties were aware of a 1989 fire,

also started by vagrants, a mere 150 feet from the loading dock. After that fire, Cold Storage hired North Kansas City Bureau of Investigation to patrol the area. The Commission also testified to patrolling the area periodically, but testimony was inconsistent as to whether it was the Commission's policy to remove vagrants or allow them to remain.

Testimony as to both parties' damages can be summarized as follows: (1) the Commission seeks compensation of $268,827.65 for damage to the bridge, but Cold Storage's expert opined the bridge could have been repaired for as little as $75,000.00; (2) the fence around the Cold Storage loading dock, valued at $4,700.00, was destroyed; (3) 1500 of Cold Storage's pallets and spreaders were destroyed at a cost of $6.00—$8.00 per pallet and $3.50—$4.00 per spreader.

Comparative fault instructions were given to the jury on the Commission's claim and Cold Storage's counterclaim. The Commission *only* appeals the comparative fault modification to its claim and to the counterclaim. The Commission does *not* appeal Cold Storage's right to bring or pursue its counterclaim. Cold Storage requested and received a comparative fault modification on the Commission's claim on the theory that the Commission was negligent in failing to control the vagrants or remove debris used to set the initial fire. Cold Storage's counterclaim for damages was also modified for comparative fault on the theory that Cold Storage was negligent in stacking flammable materials beneath the dock. In summary, instructions 5, 7, 8, 11, 12, and Verdict Forms A and B were modified and instructed the jury to "assess a percentage of fault" under the comparative fault theory. Ultimately, the jury assessed 50% fault to each side on Verdict Form A (the Commission's claim) and Verdict Form B (Cold Storage's counterclaim). The jury determined the Commission's total damages were $100,000.00 to be reduced by 50%. Cold Storage was assessed total damages of $4,700.00 to be reduced by 50% as well.

**I**

In their first point on appeal, the Commission argues that the trial court erred in

submitting its claim and the Cold Storage counterclaim with comparative fault instructions because the Commission was entitled to sovereign immunity and could not be charged with negligence except as allowed by statute.[1] Again, the Commission only appeals the comparative fault modification of each claim, not the propriety of Cold Storage's counterclaim.

◼ The Commission is a department of the executive branch of Missouri government and is entitled to sovereign immunity. *Hohimer v. Missouri Highway and Transp. Com'n*, 659 S.W.2d 521, 521–22 (Mo.App. 1983). The state's immunity from negligence liability is a general rule and exceptions to the rule are to be strictly construed. *Bates v. State*, 664 S.W.2d 563, 565 (Mo.App.1983). The two exceptions listed in the statute (motor vehicles and dangerous conditions) constitute "absolute" waivers of immunity.

◼ The court notes that the Commission did not object to the addition of comparative fault modifications to the jury instructions even when asked by the judge how sovereign immunity would effect the comparative fault submission. Rule 70.03 requires *specific* objections to jury instructions be made *prior to submission* of the case to the jury. The Commission did not raise the issue of sovereign immunity precluding comparative fault until its Motion for a New Trial. Where specific objections to jury instructions were not made prior to submission of the case, the matter is not preserved for review except for

plain error under Rule 84.13, which states that "plain error review affecting substantial rights may be considered by the court, though not raised or preserved, when the court finds that manifest injustice or a miscarriage of justice has resulted therefrom." *French v. Missouri Highway and Transp. Com'n*, 908 S.W.2d 146, 150 (Mo.App.1995). The point will be reviewed for plain error.

Although, the Commission did not distinguish in its point or argument the differing effect of comparative fault on the Commission's claim and the Cold Storage counterclaim, it is necessary for this court's analysis. The Commission maintains that the sovereign immunity statute prohibits the affirmative use of comparative fault by defendants when sued by the state. The Commission argues that comparative fault can only be used against the government where the defendant claims the government was negligent in a manner expressly excepted from the statute. Specifically, the Commission asserts the government's negligence must involve the operation of a motor vehicle or a dangerous condition on public property. Under this logic, the Commission argues neither its failure to control vagrants or remove flammable material from its property would constitute an exception to sovereign immunity, and could not reduce its recovery.

For its part, Cold Storage argues the sovereign immunity statute has no application to the situation at hand; i.e., where the state

---

1. Sovereign immunity is governed by § 537.600, RSMo 1994, and provides in pertinent part:

1. Such sovereign or governmental tort immunity as existed at common law in this state prior to September 12, 1977, except to the extent waived, abrogated or modified by statutes in effect prior to that date, shall remain in full force and effect; except that, the immunity of the public entity from liability and suit for compensatory damages for negligent acts or omissions is hereby expressly waived in the following instances:
(1) Injuries directly resulting from the negligent acts or omissions by public employees arising out of the operation of motor vehicles or motorized vehicles within the course of their employment;
(2) Injuries caused by the condition of a public entity's property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury directly re-

sulted from the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of harm of the kind of injury which was incurred, and that either a negligent or wrongful act or omission of an employee of the public entity within the course of his employment created the dangerous condition or a public entity had actual or constructive notice of the dangerous condition in sufficient time prior to the injury to have taken measures to protect against the dangerous condition....
2. The express waiver of sovereign immunity in the instances specified in subdivisions (1) and (2) of subsection 1 of this section are absolute waivers of sovereign immunity in all cases within such situations whether or not the public entity was functioning in a governmental or proprietary capacity and whether or not the public entity is covered by a liability insurance for tort.

has sued a private entity. The statute expressly provides for "immunity of the public entity from *liability* and *suit for compensatory damages* for negligent acts or omissions." (Emphasis added). Cold Storage posits that its use of comparative fault is not a suit, does not assign liability against the public entity, and is merely used as a defense. In the case at bar, the Commission, a government entity, has brought suit against a private company for compensatory damages for an alleged negligent act of the private company. The company, in requesting a comparative fault instruction on the Commission's claim, seeks to reduce the amount of money damages it will owe to the Commission to the extent that the Commission shares fault. The question presented is whether sovereign immunity precludes the use of comparative fault theory against a governmental entity when the government has initiated suit against a private party. This court does not locate and counsel does not cite any case in this jurisdiction which controls the issue of defensive use of the state's fault or negligence to reduce damages in a suit brought by the state.

In *Missouri v. Homesteaders Life Ass'n,* 16 F.Supp. 69, 74 (W.D.Mo.1936), the federal district court, while not deciding the issue directly, indicated that if the state were a plaintiff in the action it would lay aside its sovereignty and become an ordinary plaintiff concerning all proper matters of adjudication growing out of the cause sued on. The only other case, *State v. Weatherby,* 344 Mo. 848, 129 S.W.2d 887 (banc 1939), involved a suit by the state to recover unlawful payments made by a state agency to appointed counsel. The court stated that the defendant could not contend the State had laid down its sovereignty in filing suit. However, the Court nonetheless allowed the defendant to assert the defense of recoupment. In summary, the Missouri cases do not fully address the matter at issue and leave this court with no real guidance. Therefore, this court takes the opportunity to address the matter of state sovereignty affecting counterclaims more fully in light of public policy and considering cases of other jurisdictions.

Only a few states have dealt with this issue presented here. A summary can be located at 1 A.L.R.2d pages 827–830, under the heading, "Contributory negligence as a defense to action by the state." A majority of states allow the defensive use of contributory fault where the state initiates suit. Reviewing several state's decisions on this matter, a Florida District Court of Appeals identified two grounds for allowing contributory fault against the state. First, "where the government files an action like a private litigant, it impliedly waives any immunity as sovereign and its adversary is entitled to set up any defense available to him if his opponent were another private citizen." *Department of Public Safety v. Parker,* 161 So.2d 886, 888 (Fla.Dist.Ct.App.1964). The second theory involves "innate justice" which can be summarized as follows: where

> the state employs the machinery of justice to enforce a claim and yet it seeks to deny the defendant a defense which could be available ... against any other plaintiff ... [t]here is an appearance of unfairness in the state's position.... Although the state's claim of immunity in such a case is logically no more unreasonable than where the state asserts immunity as a defendant, the fact that the state initiates the proceeding puts the matter in a setting which runs counter to generally accepted notions of fair play.

*Parker,* 161 So.2d at 888, (citing, *Department of Finance and Administration v. Shinkle,* 231 Or. 528, 373 P.2d 674 (1962)). Ultimately, the Florida court adopted the "innate justice" theory and allowed the defense of contributory negligence against the state. *Parker,* 161 So.2d at 889.

In *United States v. Mottolo,* 605 F.Supp. 898, 910 (D.C.N.H.1985) the state of New Hampshire sued the defendant for the cleanup cost of a hazardous waste site. The court held that the state, by filing suit as a plaintiff, waived sovereign immunity regarding defendant's purely defensive counterclaim, which would reduce the state's recovery, but where defendant raises a counterclaim for affirmative relief against the state, the claim was properly dismissed.

In *Lima School District v. Simonsen,* 210 Mont. 100, 683 P.2d 471, 477 (1984), the court, reviewing an action brought by the school district to recover money paid to defendants under a transportation contract, allowed the defendant to bring a counterclaim arising out of the same transaction sued upon. "[W]henever the state brings an equitable action it waives any applicable sovereignty and opens the door to a defense or counterclaim germane to the matter." *Id.,* 683 P.2d at 477.

In *State Bd. Of Regents v. Holt,* 8 Kan. App.2d 436, 659 P.2d 836 (1983), a university hospital sought recovery on account for services rendered. The court allowed the defendant to assert a claim, otherwise barred by sovereign immunity, by way of set-off or recoupment so long as it arose from the same transaction giving rise to the claim filed by the state. *Id.,* 659 P.2d at 837.

The Supreme court of Alabama took a different approach to sovereignty in *Sarradett v. University of South Alabama Medical Center,* 484 So.2d 426 (Ala.1986). The court held that the doctrine of sovereign immunity barred defendant's counterclaim for wrongful death and could not off-set plaintiff's damages where the university hospital sued defendant to recover for services rendered. *Id.* at 427. The court noted that the state is as immune from counterclaims for affirmative relief as it is from original complaints. *Id.* at 427.

Under the circumstances here, where the state has initiated suit against a private party, this court holds that defendant's use of comparative fault as a defense against the state is permitted so long as the allegations supporting a comparative fault submission arise out of the same transaction upon which the state initially filed suit and the defense does not result in an affirmative judgment against the state. Therefore, Cold Storage shall be allowed to use comparative fault here. In so holding, the court does not reach the matter of whether the Commission's failure to control vagrants or remove flammable debris from its property constitutes a "dangerous condition" under sec. 537.600 as a waiver of sovereign immunity.

The court next considers Cold Storage's counterclaim against the Commission. The counterclaim, submitted under instructions 11, 12, and verdict director B, is, in practical effect, a suit for negligence against a governmental entity. Comparative fault instructions were given and reduced the amount of Cold Storage's damages by 50%. The Commission does not assert on appeal that the entire counterclaim is barred by sovereign immunity, only that sovereign immunity precludes the use of a comparative fault instruction. This court finds that sovereign immunity under § 537.600 does not preclude the affirmative use of comparative fault theory by the state to reduce damages it may owe to a private party litigant. The court does not address the matter of whether the counterclaim was wholly barred by sovereign immunity because that point, though argued at trial, was not raised in this appeal.

## II & III

The Commission's second and third points involve the propriety of the testimony of Cold Storage's expert, Dr. Roberts. Its second point alleges the trial court erred in denying its motion for judgment notwithstanding the verdict (JNOV) for the full amount of its claim because Cold Storage's damage testimony was speculative and not substantial. In a related claim, the third point asserts trial court error in allowing Dr. Roberts' testimony because it was without proper foundation. The crux of the Commission's argument asserts Dr. Roberts' testimony that the bridge could have been tested and repaired for less than the cost of total replacement was based on speculation and conjecture.

The testimony of both experts is summarized here. Mr. Martin, an engineer for the Commission, determined the quickest, safest, and least expensive way to restore the ramp was to replace a 118 foot section at a cost of $268,827.65. Via expert testimony, Cold Storage put on evidence suggesting the bridge should have been tested to determine the extent of damage to the steel. Dr. Roberts testified that the Commission's decision to replace the section before testing was unreasonable. The experts disagreed about

the effect of testing the steel. Mr. Martin felt removing portions of the steel would negatively affect the structural integrity of the bridge, while Roberts maintained obtaining the necessary samples would not have harmed the bridge and would have been more cost affective. Roberts testified, over objection, that performing the tests would have cost about $10,000.00 and, if they showed what he suspected, the bridge could have been repaired for about $75,000.00.

■ The standard of review for a failure to grant a JNOV is essentially the same as review of denial of a motion for a directed verdict. *Norris v. Jones*, 687 S.W.2d 280, 281 (Mo.App.1985). In its review, the court must accept all the evidence and reasonable inferences favorable to the verdict and all contrary evidence is disregarded. *Bayne v. Jenkins*, 593 S.W.2d 519, 521 (Mo. banc 1980). A motion for JNOV should only be granted when all the evidence and reasonable inferences to be drawn therefrom are so strong against the prevailing party that there is no room for reasonable minds to differ. *Wiegers v. Fitzpatrick*, 766 S.W.2d 126, 128 (Mo.App.1989).

■ The trial court has discretion to determine an expert's qualifications to testify on certain matters and the determination will not be set aside unless that discretion has been abused. *Missouri Pipeline Co. v. Wilmes*, 898 S.W.2d 682, 687 (Mo.App.1995). An expert's opinion must be founded on substantial information and not mere conjecture or speculation, and there must be a rational basis for the opinion. *Id.* Experts are generally qualified to estimate the costs of damages where such estimates are based on expertise and experience. *State ex rel State Highway Com'n. v. Beaty*, 505 S.W.2d 147, 154 (Mo.App.1974). In addition, the factual underpinnings of an expert witness' opinion goes to weight and credibility rather than admissibility. *Wadlow v. Lindner Homes, Inc.*, 722 S.W.2d 621, 627 (Mo.App.1986).

■ The record reveals Dr. Roberts' opinion regarding the cost of testing of the ramp's steel supports and the possible cost of repairs was based on his education and professional experience as a mechanical and structural engineer dealing extensively with bridge design and repair as well as his personal examination of the ramp after the fire. This basis was sufficient to support his opinion testimony and this court finds no abuse of discretion in allowing such testimony. In addition, there was sufficient evidence on the record to support the verdict and the court finds no error in the trial court's denial of the Commission's motion for JNOV.

The judgment of the trial court is affirmed.

All concur.