**LEONARD MISSIONARY BAPTIST CHURCH, Plaintiff/Respondent/Cross–Appellant,**

v.

**SEARS, ROEBUCK AND COMPANY, Defendant/Appellant/Cross–Respondent.**

Nos. ED 77874, ED 77955.

Missouri Court of Appeals,
Eastern District,
Division Two.

March 6, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 19, 2001.

Application to Transfer Denied
May 29, 2001.

James P. Lemonds, Erich Vieth, St. Louis, MO, for appellant.

Robert W. Cockerham, T. Michael Ward, St. Louis, MO, for respondent.

CRANDALL, Judge.

Defendant, Sears, Roebuck and Company, appeals from the judgment of the trial court, entered pursuant to a jury verdict, in favor of plaintiff, Leonard Missionary Baptist Church, in a strict liability action for damages sustained in a fire caused by a

space heater. Plaintiff cross-appeals from the trial court's reduction of the award by the amount of a prior settlement with another defendant. We affirm.

Viewed in the light most favorable to the verdict, in February 1996, Leonard Missionary Baptist Church (hereinafter LMBC) occupied a church building (hereinafter church) located at 1230 N. Grand in the City of St. Louis (hereinafter City) on the corner of Grand and Page. The church was erected around 1900. The pastor testified that the church was a "majestic" and "awesome" structure and was a "community church." The pastor and members of the congregation described the church as being in good condition and well maintained. LMBC had a membership of about 600.

On February 18, 1996, a member of the church plugged in a Sears space heater in the library of the church and left the room. Sometime thereafter, the space heater started a fire in the church's basement library. Soon, fire engulfed the church, destroying it. Because the City would not permit LMBC to build at the same location, LMBC bought a lot about two blocks from the original church for $20,000.00, cleared the lot for about $200,000.00, and erected a new church building at a cost of about $1.8 million.

LMBC brought an action against Sears and B & W Police Security Systems, Inc. (hereinafter B & W). LMBC styled its action as one for products liability, breach of warranty, negligence, and strict liability. LMBC settled its action against B & W for $25,000.00 before trial. LMBC's action against Sears was premised on Sears being "engaged in the design, manufacture, and/or sale of the space heater."

The jury returned a verdict in favor of LMBC in the amount of $2,000,000.00. The court added pre-judgment interest and entered judgment in the amount of $2,347,670.75. The court then granted Sears's after-trial motion to amend the judgment and reduced the judgment by $25,000.00, the amount LMBC received in its prior settlement with B & W. The trial court then entered an amended judgment in favor of LMBC in the amount of $2,321,247.26. Sears appeals and LMBC cross-appeals.

In its first point, Sears contends the trial court erred in submitting the issue of damages to the jury in two instructions. Sears argues that it was improper for the jury to decide whether cost of replacement or fair market value was the proper measure of damages for the loss of the church. Sears contends that the trial court should have submitted only one damage instruction to the jury, namely that related to fair market value, because the applicable measure of damages was a question of law for the trial court, not a question of fact for the jury. The court gave two not-in-M.A.I. instructions:

### INSTRUCTION NO. 10

If you find in favor of plaintiff, Leonard Missionary Baptist Church and if you believe that there was no fair market value for the church immediately before the fire of February 18, 1996, then you must award the plaintiff such sum as you may find from the evidence to be the reasonable cost of replacement of the church, plus such sum as you may find from the evidence will fairly and justly compensate plaintiff, Leonard Missionary Baptist Church, for the loss of use thereof during the time reasonably necessary for the property in question to be replaced.

### INSTRUCTION NO. 11

If you find in favor of plaintiff, Leonard Missionary Baptist Church, and if you

believe that there was a fair market value for the church immediately before the fire of February 18, 1996, then you must award the plaintiff such sum as you may find from the evidence to be the difference between the fair market value of the church before it was damaged and its fair market value after it was damaged, plus such sum as you may find from the evidence will fairly and justly compensate plaintiff, Leonard Missionary Baptist Church, for the loss of use thereof during the time reasonably necessary for the property in question to be replaced.

On appeal, the court reviews a non-M.A.I. instruction to determine whether the jury could understand the instruction and whether the instruction follows the applicable substantive law. *Seitz v. Lemay Bank and Trust Co.*, 959 S.W.2d 458, 462 (Mo. banc 1998). No error is presumed. *Mears v. Columbia Mut. Ins. Co.*, 855 S.W.2d 389, 393 (Mo.App. W.D. 1993). To justify reversal on the ground of instructional error involving a not-in-M.A.I. instruction, the challenged instruction must have misdirected, misled, or confused the jury. *Id.*

The general rule is that the measure of damages for tortious injury to real property is the difference in fair market value of the property before and after the injury or the cost of restoring the property, whichever is the lesser amount. *Culver–Stockton College v. Missouri Power and Light Co.*, 690 S.W.2d 168, 172 (Mo. App.1985). Sears avers that fair market value was the only measure of damages applicable to the present loss because the diminution in the value of the church was "far less than the cost of repairs." Sear's expert, a real estate appraiser, testified that the fair market value of the church just before the fire was $198,000.00. LMBC counters that because the church

was unique, there was no market value for it and that LMBC was entitled to recover the cost of replacement of approximately $2,000,000.00.

Rules governing the proper measure of damages in a particular case are guides only and should not be applied in an arbitrary and inflexible manner, especially where to do so would result in substantial injustice. *The Roman Catholic Church of the Archdiocese of New Orleans v. Louisiana Gas Service Co.*, 618 So.2d 874, 877 (La.1993). The Restatement (Second) of Torts recognizes a more flexible approach and provides that whenever there is injury to land, damages should include "the difference between the value of the land before the harm and the value after the harm, or at [the owner's] election in an appropriate case, the cost of restoration that has been or may be reasonably incurred...." Restatement (Second) of Torts section 929 (1977). Where expenditures to restore or to replace to predamage condition are used as the measure of damages, a test of reasonableness is imposed. *Trinity Church in City of Boston v. John Hancock Mut. Life Ins. Co.*, 399 Mass. 43, 502 N.E.2d 532, 536 (1987). Not only must the cost of replacement or reconstruction be reasonable, but the replacement or reconstruction itself must be reasonably necessary in light of the damage inflicted by the defendant. *Id.*

"For certain categories of property, termed 'special purpose property' (such as the property of nonprofit, charitable, or religious organizations), there will not generally be an active market from which the diminution in market value may be determined." *Trinity Church*, 502 N.E.2d at 535–536. This is true of such properties as "school yards, church yards, college campuses, buildings under construction, and cemeteries." *Graceland Park Cemetery Co. v. City of Omaha*, 173 Neb. 608, 114

N.W.2d 29, 32 (1962). Missouri courts have adopted the reasoning that fair market value cannot always be used to ascertain damages because certain categories of property are not bought and sold on the open market. *See, e.g., State ex rel. State Highway Comm'n v. Mount Moriah Cemetery Ass'n,* 434 S.W.2d 470 (Mo.1968) (fair market value not proper measure of damages for cemetery land); *Culver–Stockton College,* 690 S.W.2d at 168 (fair market value not appropriate measure of damages for college campus); *Reorganized School Dist. No. 2 v. Missouri Pac. R. Co.,* 503 S.W.2d 153 (Mo.App.1973) (fair market value not appropriate measure of damages for school grounds and school campuses). Permitting the injured party to recover replacement costs as damages in some cases is the only way to put that party in as good a position pecuniarily as if its property had not been taken or destroyed. *Reorganized School Dist.,* 503 S.W.2d at 159.

■ Here, there was evidence that the church was a special purpose property and that there was not an active market from which the fair market value of the church could be determined. The testimony was that the church was old, dating from the turn of the century, but was in good condition. Members of the congregation testified that the church was "special." The pastor testified that the church was a "majestic" and "awesome" structure and that it was a "community church." LMBC's expert, the architect who designed LMBC's new church, testified that he viewed the church as "historic" and a landmark in the community; and that in his opinion there was no fair market value for a building of the church's nature. Although Sears's expert witness testified regarding sales of other churches to establish the fair market value of the church, the evidence elicited was that only four religious structures had been sold in the vicinity of the church within the past four years. But, one of the sales relied upon by the expert involved the sale of a synagogue that was not actually in close proximity to the church and there also was some question as to whether the other three churches were comparable to the church in question. Under these circumstances, the proper measure of damages was not determined by reference to the fair market value of the church before and after the fire. The appropriate measure of damages, one that would put LMBC in the same position it was in before the fire, was cost of replacement.

In addition, there was evidence that replacement damages were reasonable under the circumstances. The City prohibited LMBC from rebuilding on the same lot on which the church had been located before the fire. Yet, the new church was located within the same geographic area as the old church so it could serve the same congregation. LMBC paid about $220,000.00 to purchase and prepare a lot for the new church building and about $1.8 million for construction of the new church under present day construction techniques. The architect testified that to put the church building back to the way it was before the fire would have cost approximately $3.3 million. Thus, the evidence supported not only the reasonableness of LMBC's decision to rebuild the church at a nearby location but also the reasonableness of the cost to do so. The trial court did not err in submitting Instruction No. 10 based on replacement cost.

Given our holding, we need not reach the issue of whether the trial court erred in submitting two instructions on the measure of damages. Clearly, there was substantial evidence to support the jury verdict based on replacement cost. The submission of an additional instruction on

the measure of damages based on fair market value did not prejudice Sears; and LMBC does not claim any prejudice. *See* Rule 73.02(c) (requiring a determination of the prejudicial effect of instructional error).

■ Sears also charges error in the trial court's failure to submit the issue of depreciation to the jury. Sears, however, did not tender an instruction on depreciation. *See, e.g.. Culver–Stockton College,* 690 S.W.2d at 173. Thus, this issue is not preserved for our review.

The trial court did not err in instructing the jury on the measure of damages. Sears's first point is denied.

■ In its second point, Sears asserts the trial court erred in permitting LMBC's expert, an architect, to testify as to the church's replacement cost. Sears argues that only real estate appraisers are competent to render an opinion as to the fair market value of property. Here, LMBC's expert provided no evidence of the sale of comparable properties, but did express the opinion that the church had no fair market value.

■ The trial court has discretion to determine an expert's qualifications to testify. *Missouri Highway and Transportation Comm'n v. Kansas City Cold Storage, Inc.,* 948 S.W.2d 679, 684 (Mo.App. W.D. 1997). Our review is limited to determining whether there has been an abuse of that discretion. *Id.* To be admissible, an expert's testimony must be founded on substantial information and have a rational basis. *Id.* at 684. In general, an expert is qualified to testify on damages where the expert's testimony is based on the expert's expertise and experience. *Id.*

In the instant action, the expert testified as to the cost of replacement of the church. The evidence as to his qualifications was that he was an architect who had experi-ence in renovating and building churches and who was engaged by LMBC to build its new church. Thus, he knew what it had cost LMBC to relocate and to rebuild the new church. Although he expressed the opinion that the church had no fair market value, that opinion was based upon his view that the church was historic and was a landmark in the community. The trial court did not abuse its discretion in permitting LMBC's expert to testify about the cost to replace the church. Sears's second point is denied.

Sears raises several other points, alleging trial court error in admitting evidence of injuries to persons not parties to the action (Point III); in refusing to grant Sears's request for remittitur (Point IV); in denying Sears's motion jnov on the basis that LMBC failed to make a submissible case of strict liability (Point V); in admitting certain exhibits (Point VI); in permitting LMBC's expert to use four Sears space heaters during his testimony (Point VII); and in barring testimony regarding insurance coverage (Point VIII). We have reviewed these points on appeal and find that an opinion on these claims of error would have no precendential value. Sears's remaining points are denied pursuant to Rule 84.16(b).

■ In its cross-appeal, LMBC contends the trial court erred in amending the judgment and reducing the jury's award by the $25,000.00. The trial court found that LMBC "received the sum of . . . ($25,-000.00) in settlement of its claim with defendant B & W . . . ." Here, the parties disputed neither the fact of the settlement nor the amount of the settlement. Under these circumstances, the trial court did not err in reducing the judgment by the amount of LMBC's settlement with another defendant. LMBC's point on its cross-appeal is denied.

The judgment of the trial court is affirmed.

AHRENS, P.J., and JAMES R. DOWD, J., concur.