Evan W. MONTGOMERY and Judith
A. Montgomery, Respondents,

v.

SOUTH COUNTY RADIOLOGISTS,
INC., Edward D. Habert, M.D. and
Jeffrey B. Judd, M.D., Appellants,

and

Ata Siddiqui, M.D., William Turnage,
M.D. and David G. Kennedy,
M.D., Defendants.

No. ED 84410.

Missouri Court of Appeals,
Eastern District,
Division One.

June 14, 2005.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 18, 2005.

Application for Transfer Denied
Aug. 30, 2005.

Susan Ford Robertson, Ford Parshall & Baker, Columbia, MO, for appellants.

Athony S. Bruning, Leritz, Plunkert & Bruning, St. Louis, MO, for respondents.

GARY M. GAERTNER, Presiding Judge.

Appellants, South County Radiologists, Inc. ("South County Radiologists"), Edward D. Habert, M.D. ("Dr. Habert") and Jeffrey B. Judd, M.D. ("Dr. Judd"), appeal the decision of the circuit court of the City of St. Louis entered in favor of Respondent, Evan W. Montgomery ("Mr. Montgomery"), after a jury trial. Mr. Montgomery was awarded $1,450,000 against all three Appellants, plus Dr. David G. Kennedy ("Dr. Kennedy") and David G. Kennedy, M.D., PC, and $800,000 against William Turnage, M.D. ("Dr. Turnage") and Ata Siddiqui, M.D. ("Dr. Siddiqui"). We affirm.

Mr. Montgomery began feeling back pain in December of 1994. The pain continued into 1995, and an MRI taken in February of 1995 revealed a small disk protrusion according to Dr. Edward Szoko ("Dr. Szoko"), a radiologist employed by South County Radiologists. This was Dr. Szoko's only significant finding. Dr. Kennedy, a neurosurgeon employed by David G. Kennedy, M.D., P.C., reviewed the film and agreed with the findings of Dr. Szoko. Dr. Kennedy ordered Mr. Montgomery to receive trigger point injections and physical therapy. Mr. Montgomery's pain did not subside after the treatment so Dr. Kennedy recommended lumbar microdiskectomy surgery, which was performed on June 30, 1995.

When the pain continued after the lumbar microdiskectomy surgery, Dr. Kennedy referred Mr. Montgomery for another MRI in July of 1995 and Dr. Habert, a radiologist employed by South County Radiologists, found fluid accumulation in the region of the surgery. No findings related to an abnormality in the sacrum were made by Dr. Habert. With the pain still affecting Mr. Montgomery, Dr. Kennedy sent Mr. Montgomery for another MRI on November 3, 1995. Dr. Judd, another radiologist employed by South County Radiologists, read the November MRI and reported finding some post-operative scarring. No findings related to an abnormality in the sacrum were made by Dr. Judd.

Judith A. Montgomery ("Mrs. Montgomery"), the wife of Mr. Montgomery, took the November 3, 1995 MRI film to her former place of employment, Central Radiology Group, on or about November 6, 1995. Dr. Catherine Beal ("Dr. Beal"), a radiologist at Central Radiology Group, reviewed the film and within approximately one minute of inspecting the MRI observed an abnormality in Mr. Montgomery's sacrum. Soon thereafter, Dr. Beal notified Dr. Kennedy of her concern about the abnormality she found while reviewing Mr. Montgomery's MRI. On November 16, 1995, it was formally diagnosed that Mr. Montgomery had a tumor in his sacrum. When Dr. Kennedy reported to Mr. Montgomery the finding of a sacral tumor, Mr. Montgomery stopped treatment with Dr. Kennedy and received a referral to Dr.

Doug McDonald, a surgeon. The tumor was biopsied, thought to be benign, and partially removed during a surgery performed at Saint Louis University Hospital on December 8, 1995. The removal of the tumor eliminated Mr. Montgomery's severe back pain forthwith.

After slides of the tumor were examined at the Mayo Clinic in Rochester, Minnesota, the ultimate diagnosis was osteosarcoma, which is a type of malignant bone cancer. Dr. McDonald recommended surgery to remove osteosarcoma margins around where the tumor had been located. Mr. Montgomery underwent surgery on May 6, 1996 at Saint Louis University Hospital. During the surgery, Mr. Montgomery's eyes were taped shut and he was placed face down. Dr. Turnage, an anesthesiologist, was in charge of monitoring and maintaining positioning of Mr. Montgomery's head and face. Dr. Turnage supervised Dr. Siddiqui, who was working as an anesthesiologist resident at St. Louis University Hospital. Upon waking from the May 1996 surgery, Mr. Montgomery discovered that he was blind in his left eye, a problem that persists to this day. According to Dr. John Selhorst, a neurologist, Mr. Montgomery is permanently blind in his left eye.

Mr. Montgomery filed suit in the Circuit Court of the City of St. Louis against Dr. Kennedy, Dr. Habert, Dr. Judd, Dr. Szoko and the employer of the latter three, South County Radiologists, for injuries Mr. Montgomery alleged he sustained due to the failure of all four doctors to properly interpret lumbar spine MRIs taken in 1995 and to diagnose a sacral mass that resulted in him experiencing back pain from February 25, 1995 through December 8, 1995. Mr. Montgomery also alleged he underwent an unnecessary disk surgery performed by Dr. Kennedy in June of 1995. Dr. Turnage and Dr. Siddiqui were also named as defendants in the suit. Mr. Montgomery alleged that Dr. Turnage and Dr. Siddiqui were negligent in the provision of anesthesia services during the May 1996 surgery at Saint Louis University Hospital. Mr. Montgomery alleged that the negligence of Dr. Turnage and Dr. Siddiqui during his surgery led to permanent blindness in his left eye. The petition alleged that all the defendants were joint tort-feasors.

South County Radiologists, Dr. Habert, Dr. Szoko and Dr. Judd all filed motions to transfer venue. In September of 1997, presiding Judge Robert Dierker, Jr. issued an order and written opinion denying the motions to transfer venue. Subsequently, Dr. Szoko and South County Radiologists were granted summary judgment with respect to claims arising out of Dr. Szoko's reading of the February 14, 1995 MRI. The summary judgments granted to South County Radiologists and Dr. Szoko were appealed by Respondents after the remaining defendants were dismissed without prejudice. The Missouri Supreme Court affirmed the summary judgment as to Dr. Szoko, but reversed as to South County Radiologists liability for the acts of Dr. Szoko.

The current case, involving issues identical to those in the 1997 suit, was filed in 1999. After the decision of the Missouri Supreme Court, Appellants moved to consolidate the 1997 suit with the 1999 suit. The consent order, filed on May 13, 2002, which consolidates the two actions, stipulates that all orders, rulings, and judgments entered in the 1997 suit will be binding on the parties in the current action.

The trial of the current suit was held in November of 2003. At the trial, during cross-examination of Dr. David Tarlow ("Dr. Tarlow"), Dr. Tarlow was asked about an article in a medical journal enti-

tled "Radiology." When Dr. Tarlow was asked about the article in "Radiology," counsel for Mr. Montgomery objected on the grounds of hearsay and lack of foundation. The objection was sustained. The trial court also sustained the lack of foundation objection following Appellants' offer of proof, which was conducted the day after Dr. Tarlow was cross-examined.

At the conclusion of Respondents' evidence, Dr. Habert and Dr. Judd moved for a directed verdict, which was denied by the court. At the conclusion of all of the evidence, counsel for Dr. Habert and Dr. Judd moved for a directed verdict and reasserted their motion regarding a claim of improper venue. The trial court denied both of these motions. The jury returned a verdict in favor of Mr. Montgomery and against Dr. Kennedy, David G. Kennedy, M.D., P.C., Dr. Habert, Dr. Judd, and South County Radiologists on the failure to recognize and report a sacral mass, and awarded damages to Mr. Montgomery on that claim in the amount of $1,450,000. The jury apportioned fault in the following manner: 10% to Dr. Kennedy and David G. Kennedy, M.D., P.C. for failure to recognize an abnormality on Mr. Montgomery's February 14, 1995 MRI; 30% to Dr. Habert and South County Radiologists for failure to recognize and report a sacral mass on Mr. Montgomery's July 31, 1995 MRI; and 60% to Dr. Judd and South County Radiologists for failure to recognize and report a sacral mass on Mr. Montgomery's November 3, 1995 MRI. The jury awarded Mrs. Montgomery no damages for her loss of consortium claims. On Mr. Montgomery's claims against Dr. Turnage and Dr. Siddiqui, the jury found in favor of Mr. Montgomery and awarded

him $800,000. Finally, on the claim by Mr. Montgomery against South County Radiologists for the alleged negligence of Dr. Szoko, the jury found in favor of South County Radiologists. Judgment was subsequently entered in accordance with the jury verdict on January 7, 2004.

On December 23, 2003, Dr. Habert and Dr. Judd filed post-trial motions, and then filed amended motions on January 29, 2004. At a hearing on the post-trial motions, four jurors were questioned and evidence was introduced regarding a fifth juror, Nette Lewis, concerning allegations that the jurors withheld information about past involvement in lawsuits during *voir dire* questioning. The trial court did not rule on the post-trial motions within 90 days of their filing, and, thus, this appeal by Appellants followed.[1]

■ In their first point on appeal, Appellants claim the trial court erred in denying their motion to transfer venue in that the trial court abused its discretion in refusing to transfer the claims against Dr. Habert and Dr. Judd to St. Louis County.

■ When a suit is brought against one or more corporations and one or more individuals, the general venue statute, section 508.010 RSMo 2000,[2] governs. *State ex rel. Rothermich v. Gallagher*, 816 S.W.2d 194, 197 (Mo.banc 1991). The party challenging venue carries the burden of persuasion and proof, if proof is necessary, that venue is improper. *State ex rel. Etter, Inc. v. Neill*, 70 S.W.3d 28, 31 (Mo. App. E.D.2002). Section 508.010(6) provides, in pertinent part, that: "[i]n all tort actions the suit may be brought in the county where the cause of action accrued

---

1. Following the trial, Mr. Montgomery settled his dispute with Dr. Kennedy and David G. Kennedy, M.D., P.C. Dr. Turnage and Dr. Siddiqui have also recently settled their disputes with Mr. Montgomery.

2. All statutory references are to RSMo 2000 unless otherwise indicated.

regardless of the residence of the parties ..." Section 508.010(6). Venue exists for all jointly-liable defendants where venue exists for any one of the defendants. *State ex rel. BJC Health System v. Neill*, 121 S.W.3d 528, 530 (Mo.banc 2003).

A party who commits an act of negligence is liable for all damages caused by the act of negligence, including later medical malpractice damages caused by a second party. *See State ex rel. Bitting v. Adolf*, 704 S.W.2d 671, 672–73 (Mo.banc 1986) (holding that joint liability of a tortfeasor and the doctors who negligently treated a plaintiff for the injuries sustained in the original accident justified joinder and venue). The second party is liable only for that portion of the total damages which is caused by their malpractice. *Id.* at 673. The two separate parties may be jointly and severally liable for a portion of the damages suffered by the plaintiff. *Id.*

In denying the motions to transfer venue brought before him in September of 1997, Judge Dierker concluded that venue was proper in the city of St. Louis "because the injuries which occurred in the City are allegedly the result of surgery that was necessitated by the prior allegedly wrongful acts committed in St. Louis County by St. Louis County residents. Since there is an alleged joint liability for the injuries which occurred in the City of St. Louis, venue is proper as to all defendants."

The claims that were brought by Mr. Montgomery against Dr. Turnage and Dr. Siddiqui alleged negligence arising out of surgery performed on May 6, 1996 in the City of St. Louis. Nonetheless, Appellants assert that the only proper venue for the claims against them was in St. Louis County, because Dr. Habert and Dr. Judd reside in St. Louis County and the alleged negligent acts of Dr. Habert and Dr. Judd occurred in St. Louis County. According to Appellants, there is no common or joint liability between the claims against them and the claims brought against Dr. Turnage and Dr. Siddiqui, because the claims against Dr. Turnage and Dr. Siddiqui involved injuries separate and divisible from the injuries alleged to be caused by the negligence of Appellants.

Montgomery's petition alleged all the defendants in the case were joint tortfeasors. Specifically, the petition alleged that the damages caused by the negligence of Dr. Turnage and Dr. Siddiqui were a direct and foreseeable consequence of the negligence of Dr. Kennedy, Dr. Habert, Dr. Judd and South County Radiologists. The petition claims that the negligence of Appellants caused "surgeries and treatments for cancer, the degree of which was unnecessary ..." Respondents' petition was sufficient to support an allegation of joint liability. There is no evidence that any allegations of joint liability in the petition were made in bad faith. Appellants claim that testimony at the trial revealed that the May 1996 surgery would have been necessary regardless of when the tumor was found and diagnosed. However, venue is determined as the case stands when brought, rather than when a motion challenging venue is decided. *State ex rel. Private Nursing v. Romines*, 130 S.W.3d 28, 30 (Mo.App. E.D.2004). Therefore, the trial court did not abuse its discretion in denying Appellants' motion to transfer venue. Point denied.

In their second point on appeal, Appellants claim that the trial court erred in denying their motion for a new trial because juror non-disclosure warranted a new trial.

We have reviewed the briefs of the parties and the record on appeal with respect to this claim. As an extended opinion would serve no jurisprudential purpose, we

affirm this part of the judgment pursuant to Rule 84.16(b). Point denied.

■ In the third point on appeal, Dr. Judd claims the trial court erred in denying his motion for directed verdict and motion for a judgment notwithstanding the verdict ("JNOV motion"), because Mr. Montgomery failed to adduce substantial evidence to prove the necessary elements of his medical negligence claim against Dr. Judd.

■ Our standard of review for the denial of a JNOV motion and the denial of a motion for directed verdict are essentially the same. *Giddens v. Kansas City Southern Ry. Co.*, 29 S.W.3d 813, 818 (Mo. banc 2000). In deciding whether there was sufficient evidence to support the jury's verdict, the evidence is viewed in the light most favorable to the jury's conclusion. *Id.* A case cannot be submitted to the jury unless all facts essential to liability are based upon legal and substantial evidence. *Id.* We will reverse the jury's verdict for insufficient evidence only if there are no probative facts to support the verdict. *Id.*

■ In order to prove medical malpractice the three elements a plaintiff must establish are: 1) an act or omission of the defendant failed to meet the required standard of care; 2) the defendant was negligent in the performance of the act or omission; and 3) the act or omission caused the plaintiff's injury. *Echard v. Barnes–Jewish Hosp.*, 98 S.W.3d 558, 565 (Mo.App. E.D.2002).

Dr. Judd claims that Mr. Montgomery failed to prove damages as a result of the alleged negligence by Dr. Judd, and as a result the claim against Dr. Judd should not have been submitted to the jury.

There is evidence that Dr. Beal discovered what was later confirmed to be a tumor on or about November 6, 1995, which was three days after Dr. Judd failed to find the tumor upon review of the November 3, 1995 MRI. November 16, 1995 is the date the tumor was formerly diagnosed after Dr. Beal had relayed her concerns to Dr. Kennedy about the abnormality she found on the November 3, 1995 MRI that Dr. Judd had previously reviewed. Mr. Montgomery contends that had Dr. Judd initially found the tumor upon his review of the MRI, then diagnosis of the tumor, the biopsy and the tumor removal would have been scheduled sooner and his pain symptoms would have subsided weeks earlier. Dr. Tarlow testified that had Dr. Judd properly diagnosed the mass which was Mr. Montgomery's tumor, then he would have received the biopsy procedure a couple weeks earlier. The evidence reveals that Mr. Montgomery's severe back pain ended after the tumor was finally biopsied and partially removed. Thus, there is sufficient evidence that Mr. Montgomery suffered damages due to the negligence of Dr. Judd. Therefore, the trial court did not err in denying Dr. Judd's motion for directed verdict and JNOV motion. Point denied.

■ In their fourth point on appeal, Appellants claim the trial court erred in denying their motion for a new trial because the court improperly refused to allow them to use an article from the "Radiology" journal to impeach Mr. Montgomery's expert witness.

■ In the absence of prejudice, there is no reversible error. *McAllister v. McAllister*, 101 S.W.3d 287, 293 (Mo.App. E.D.2003).

Assuming *arguendo* that the trial court did abuse its discretion in refusing to allow Appellants to use the journal article during cross-examination of Dr. Tarlow, Appellants were not prejudiced. Appellants' counsel, through use of the journal article,

wanted to prove that the pattern of fat distribution in the lower back seen on Mr. Montgomery's February 1995 MRI was normal and not a concern related to cancer. This line of defense was clearly only meant to be used in regards to review of the February 1995 MRI. However, none of the Appellants, including South County Radiologists, were found liable in relation to the February 1995 MRI.

A different defense strategy was utilized as to the review of the July 1995 and November 1995 MRIs by Dr. Habert and Dr. Judd. The defense strategy related to these later MRIs centered around the contention that while, in retrospect, a tumor could be seen on the MRIs, Dr. Habert and Dr. Judd did not breach their standard of care by failing to find the tumor. Dr. Joel Meyer, a radiologist who testified as an expert witness for the defense, and Dr. Szoko conceded that the July 1995 MRI reviewed by Dr. Habert and the November 1995 MRI reviewed by Dr. Judd did in fact reveal, upon close inspection, an abnormality in sacrum that was later proven to be a tumor. Furthermore, Dr. Habert and Dr. Judd also conceded that, in retrospect, the MRIs they reviewed did reveal what is known now to be a tumor in the sacrum. Thus, the intended use of the journal article, during Dr. Tarlow's cross-examination, to prove that there was nothing in the February 1995 MRI that should cause alarm about a possible tumor would have had no relevance to the defense of Dr. Habert and Dr. Judd, who were only found liable with respect to the July and November 1995 MRIs. Therefore, the trial court did not err in denying Appellants' motion for a new trial, because they were not prejudiced by the trial court's decision to sustain the objections related to use of the journal article during Dr. Tarlow's examination. Point denied.

In their final point on appeal, Appellants claim the trial court erred in denying their motion for a new trial because of the excessiveness of the jury verdict.

We will only order a new trial upon a showing that trial court error indicated prejudice in the jury, but the amount of the verdict, by itself, does not constitute enough proof to establish that the verdict was the result of bias, passion, or prejudice. *Lopez v. Three Rivers Elec. Co-op., Inc.*, 92 S.W.3d 165, 175 (Mo.App. E.D. 2002).

The record does not reflect that any trial court error was made in this case which would indicate prejudice motivated the jury's assessment of damages. Therefore, the trial court did not err in denying Appellant's motion for a new trial. Point denied.

Based on the foregoing, we affirm the judgment of the trial court.

SHERRI B. SULLIVAN, J. and BOOKER T. SHAW, J., concur.