Melissa K. WALLEY and Thomas Walley, Appellants,

v.

LA PLATA VOLUNTEER FIRE DEPARTMENT, La Plata Rural Fire Protection Association and the City of La Plata, Respondents.

No. WD 72615.

Missouri Court of Appeals, Western District.

March 20, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 1, 2012.

Application for Transfer Denied July 3, 2012.

Susan Ford Robertson, Kansas City, MO and Kenneth B. McClain II and Daniel A. Thomas, Independence, MO, for appellants.

D. Keith Henson, St. Louis, MO and John G. Schultz, Kansas City, MO, for respondents.

Before Division Two: GARY D. WITT, Presiding Judge, JOSEPH M. ELLIS, Judge and MARK D. PFEIFFER, Judge.

GARY D. WITT, Judge.

Melissa Walley and Thomas Walley appeal a judgment from the Circuit Court of Adair County in Melissa Walley's favor, awarding her damages from the La Plata Volunteer Fire Department. We affirm.

## Factual Background[1]

Melissa Walley and her husband, Thomas Walley[2] sued the La Plata Volunteer Fire Department, the City of La Plata, La Plata Rural Fire Protection Association and a number of employees of the above entities individually[3] for injuries sustained by Walley in the line of duty, in an automobile accident that occurred on March 4, 2001.

At the time of the accident, Walley was employed as a Trooper with the Missouri State Highway Patrol ("Highway Patrol"). The night of March 4th, Walley, after completing another call, was conversing with a deputy sheriff. At that time, on the deputy sheriff's radio she overheard a report of an accident with a head injury on Route E, a couple miles from where she was located. She radioed a Highway Patrol Troop B dispatcher and an Adair County Sheriff's Department dispatcher to see if they had been notified of an accident. Each reported that they had no such notification. Concerned that no emergency responders may be on the scene, Walley made her way to the site of the reported accident. Trav-

1. "The pertinent facts are viewed in the light most favorable to the jury's verdict." *Hayes v. Price*, 313 S.W.3d 645, 648 (Mo. banc 2010).

2. Thomas Walley's claim was for loss of consortium based on injuries to Melissa Walley. Because the issues raised on appeal go only to the claims of Melissa Walley, we will refer to her individually as "Walley" for ease of discussion.

3. Also listed as defendants in the original suit were Jeffrey Mock, Jerry Thomas, Aaron Chamberlin, Lucas Perry, Kevin East, Kendall Peterson, Dawn Love, Jeremy Gladback, and Roger Matthews.

eling on Route E, Walley slowed her vehicle to somewhere between 70 and 85 miles per hour as she approached a hill. Unknown to her, over the crest of that hill was the scene of the accident. There was no warning at the top of the hill of the accident on the other side. At the scene of the accident were multiple emergency vehicles which were parked on both sides of the roadway belonging to volunteer firefighters and other emergency responders. Walley crested the hill and was unable to stop quickly enough to avoid hitting a vehicle belonging to Jeffrey Mock ("Mock"). Mock was a volunteer firefighter for both the La Plata Rural Fire Protection Association and the La Plata Volunteer Fire Department. The La Plata Volunteer Fire Department was controlled by the City of La Plata. All of these entities were named as defendants in the cause of action as well as various other individuals who were employed by these entities. Except where necessary to differentiate the various defendants, we will refer to all of them collectively as "La Plata."

Walley suffered from back pain following the accident and consulted multiple physicians. Walley had three spine surgeries and one abdominal surgery to relieve the pain she alleged she suffered due to the accident. She testified that she still suffers continued pain from the injuries she sustained. Experts testified on her behalf that due to her injuries she is currently unable to work or do physical activity and is at risk for additional spinal surgeries. Walley's medical expenses from the accident totaled $222,425.86. Based on additional expert testimony, her estimated economic loss totaled an additional $1,600,000. Medical experts, who testified on behalf of the defendants, disputed the extent of her injuries, whether the surgeries were necessitated by her injuries from this accident, whether she continues to suffer pain, and whether she should be able to return to work.

Various lay and expert witnesses testified to the following: (1) how the accident occurred and the alleged contributing causes of the accident, including the procedures which should have been followed by the La Plata Volunteer Fire Department that, if followed, may have avoided the accident; (2) the speed at which Walley was driving at the time of the accident; and (3) Walley's ability or inability to avoid the accident.

Over Walley's objection, the trial court submitted to the jury the issue of Walley's comparative fault based on her alleged excessive speed. Walley argued that she was protected from a comparative fault submission by official immunity and the contractual language of a release signed by Mock.

During the pendency of the suit, Mock filed a counterclaim against Walley and a third-party petition against the Highway Patrol for injuries he sustained in the same accident. Mock settled his claims against Walley and the Highway Patrol, whereby he executed a general release and settlement agreement. Walley, the Highway Patrol, and Mock were parties to that agreement. Walley argued that giving the comparative fault instruction was error due to the language of the general release executed by Mock.

The jury returned a verdict finding Walley ninety percent (90%) at fault for the accident and La Plata ten percent (10%) at fault. The jury found the total amount of Walley's damages to be $800,000. The jury also found that Thomas Walley had suffered no loss of consortium damages as a result of the injury to his wife.

Walley brings two points on appeal. More factual details will be presented as necessary in the analysis section.

## Analysis

■ In Point One, Walley argues the trial court erred in submitting the issue of Walley's comparative fault to the jury and rejecting her proposed jury instructions because she was protected by official immunity in that she was injured while responding as a Highway Patrol Trooper to an emergency call and official immunity shields her from a finding of comparative fault and further she argues that she is protected by the language of the general release of all claims of liability in the case executed by Mock.

■ Whether the jury was properly instructed is an issue this Court reviews *de novo*. *Hayes v. Price*, 313 S.W.3d 645, 650 (Mo. banc 2010).

■ Official immunity is a judicially created doctrine recognized in 1854 and accepted as the policy of the State of Missouri since that time. *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. banc 2008). "Official immunity protects public officials from liability for alleged acts of ordinary negligence committed during the course of their official duties for the performance of discretionary acts." *Davis v. Lambert–St. Louis Int'l Airport*, 193 S.W.3d 760, 763 (Mo. banc 2006) (citing *Kanagawa v. State*, 685 S.W.2d 831, 835 (Mo. banc 1985)). "When an officer is responding to an emergency [ . . . ] the officer exercises judgment and discretion and is entitled to official immunity." *Id.* As the Missouri Supreme Court has pointed out, a contrary rule would risk delay in responses to emergency calls and would be contrary to the public interest. *Id.* However, "[a] finding that a public employee is entitled to official immunity does not preclude a finding that he or she committed a negligent act-because official immunity does not deny the existence of the tort of negligence, but instead provides that an officer will not be liable for damages caused by his negligence." *Southers*, 263 S.W.3d at 611 (citing *Davis*, 193 S.W.3d at 765–66).

■ "The adoption of comparative fault requires the jury be given the responsibility of assessing the relative fault of the parties in tort actions." *Kramer v. Chase Resorts, Inc.*, 777 S.W.2d 647, 651 (Mo.App. E.D.1989) (citing *Patton v. May Dep't Stores Co.*, 762 S.W.2d 38, 40 (Mo. banc 1988)). If there is evidence from which a jury could find that plaintiff's conduct contributed to cause some of the damages the plaintiff sustained, the parties to a negligence action are entitled to have the jury instructed under comparative fault principles. *Buatte v. Schnuck Markets, Inc.*, 98 S.W.3d 569, 576 (Mo.App. E.D. 2002). If the plaintiff's comparative fault is supported by substantial evidence, it is proper to give the instruction. *Id.* The submission is dependent upon the facts presented in a particular case. *Id.*

Walley argues that the same policy arguments protecting an officer from a finding of *liability* as a defendant should apply equally to shielding Walley from a finding of comparative fault when she is the plaintiff in the cause of action. This appears to be an issue of first impression before the courts of Missouri.

In cases dealing with official immunity, the more common scenario, as in *Davis*, is when an officer is sued by a plaintiff who argues that the officer's negligent driving of a vehicle, responding to an emergency situation, has caused injury to the plaintiff and the plaintiff, accordingly, is seeking redress. *See Davis*, 193 S.W.3d at 762. In such cases, it has been repeatedly held that the officer is protected by the doctrine of official immunity. *See e.g., Davis*, 193 S.W.3d at 762; *Kanagawa v. State By and Through Freeman*, 685 S.W.2d 831, 835 (Mo. banc 1985). Such was the case in

*Davis* where the jury, under a comparative fault instruction, assigned seventy-five percent of the fault to the plaintiff and twenty-five percent of the fault to the officer. *Id.* There, the court held that the plaintiff could not recover against the officer because the officer was protected by official immunity. *Id.* at 764. There remains tortious conduct by the officer, and the quality and characterization of that conduct is unchanged; but, the officer is given absolution from liability. RESTATEMENT (THIRD) OF TORTS sec. E19 cmt. f (2000).

Walley would have us conclude, then, that since Walley is given absolution from liability under a comparative fault scheme when a plaintiff is seeking *recovery against her* for her tortious acts, then she should be given absolution from her liability when *she seeks recovery* against someone for his tortious acts. She is attempting to use the doctrine *offensively* to project her tortious conduct onto the person she is suing. We find that the application of official immunity in this context would be in error.

■ In *Missouri Highway and Transp. Comm'n v. Kansas City Cold Storage, Inc.*, this court considered the question "whether sovereign immunity precludes the use of comparative fault theory against a governmental entity when the government has initiated suit against a private party." 948 S.W.2d 679, 683 (Mo.App. W.D.1997). In that case, we found that Missouri law provided little guidance and so we looked to a number of other jurisdictions and held that

> where the state has initiated suit against a private party, this court holds that defendant's use of comparative fault as a defense against the state is permitted so long as the allegations supporting a comparative fault submission arise out of the same transaction upon which the state initially filed suit and the defense does

not result in an affirmative judgment against the state.

*Id.* at 684. In that case we cited two grounds upon which other courts had based this rule. First, "where the government files an action like a private litigant, it impliedly waives any immunity as sovereign and its adversary is entitled to set up any defense available to him if his opponent were another private citizen." *Id.* at 683 (quoting *Department of Public Safety v. Parker*, 161 So.2d 886, 888 (Fla.Dist.Ct. App.1964)). The second basis was "innate justice" which was summarized as follows:

> where the state employs the machinery of justice to enforce a claim and yet it seeks to deny the defendant a defense which could be available ... against any other plaintiff ... [t]here is an appearance of unfairness in the state's position.... Although the state's claim of immunity in such a case is logically no more unreasonable than where the state asserts immunity as a defendant, the fact that the state initiates the proceeding puts the matter in a setting which runs counter to generally accepted notions of fair play.

*Id.* (quoting *Parker*, 161 So.2d at 888). Although we recognize that the above case involved the issue of *sovereign* immunity not *official* immunity, we believe the same considerations apply. Official immunity exists to protect public officials from liability for their tortious acts committed in the course of their duties when they are exercising their discretion. *Davis*, 193 S.W.3d at 763. In this suit, Walley is not *defending* her tortious conduct. Innate justice dictates that when Walley, as a plaintiff, brings an action for redress, official immunity does not deny the defendant the defense of comparative negligence, so long as it does not result in an affirmative judgment against Walley. *See Kansas City Cold Storage, Inc.*, 948 S.W.2d at 684.

Official immunity, therefore, does not protect Walley from a finding that she was partially at fault when she is acting as a plaintiff under these circumstances, where she is not facing liability for a damage award.

■ Walley further argues under this Point that she is protected by the language of the general release of all claims of liability in the case executed by Mock.[4] In addition to the other defendants, Walley named Mock as an individual defendant. Mock filed a Counterclaim against Walley and a Third Party Petition against the Highway Patrol, alleging claims for damages for personal injuries that he sustained in the automobile accident that is the subject of this litigation. Mock, Walley, and the Highway Patrol reached a settlement of Mock's claims. Mock executed a "Release and Settlement Agreement" ("Release"), in which Mock accepted $25,000 to settle all claims arising out of the accident in question. Mock agreed to accept that sum as full and complete compensation for all damages arising as a result of the accident and he agreed "to dismiss with prejudice his Third Party Plaintiff Mock's Petition for Damages against Third Party Defendant Missouri Highway Patrol and Defendant Mock's Counterclaim against Melissa Walley [. . .]"

■ Mock also agreed to discharge the State of Missouri and any agency, employee or former employee of the State of Missouri, from any and all liability, claims, actions, causes of action, demands, rights damages, costs, interest, loss of service, expenses, and/or compensation whatsoever arising out of any claim, cause of action, conditions, incidents or occurrences that took place prior to this Agreement.

The Release finally stated that it "shall be binding upon, and inure to the benefit of the heirs, personal representatives, successors and assigns of the parties hereto."

A release is a contract requiring consideration and is governed by the same principles applicable to any other contractual agreement." *Sansone v. Moseley,* 912 S.W.2d 666, 670 (Mo.App. W.D. 1995). As with any contract, the intent of the parties governs when interpreting a release. *Tuttle v. Muenks,* 21 S.W.3d 6, 9 (Mo.App. W.D.2000). "Where the language used in a release is plain and unambiguous, we will determine that intent based on the contract's language, and not based on parol or extrinsic evidence." *Id.* [at] 9. These rules support " 'the policy of law that encourages freedom of contract and the peaceful settlement of disputes.' " *Baker–Smith Sheet Metal, Inc. v. Bldg. Erection Servs. Co.,* 49 S.W.3d 712, 715 (Mo.App. W.D.2001) (quoting *Blackstock v. Kohn,* 994 S.W.2d 947, 954 (Mo. banc 1999)). *City of Kansas City v. Southwest Tracor Inc.,* 71 S.W.3d 211, 215 (Mo.App. W.D. 2002).

The language of the Release is clear and unambiguous. Mock, individually, settled "any and all claims he may have against the State." He also agreed to dismiss with prejudiced his "Petition for Damages Against Third–Party Defendant Missouri Highway Patrol and Defendant Mock's Counterclaim against Plaintiff Melissa Walley." Nowhere in the Release does the language indicate that Mock gave up the affirmative defense of contributory negligence in Walley's suit against him and La Plata. Further, nowhere in the Re-

---

4. This issue should have been raised in a separate point relied on; however, as it does not impede our ability to decide this issue on the merits, we shall proceed to address the issue raised. *Miller v. O'Brien,* 168 S.W.3d 109, 112 (Mo.App. W.D.2005).

**232**

lease does Mock purport to bind La Plata by his agreement. Nowhere in the Release, which "embodies the entire agreement and understanding of the parties," does Mock assert that he is acting as an agent and/or employee of La Plata. None of the other defendants in the underlying action, except Mock, were parties to the Release. The language of the Release is unambiguous and clear. Thus, matters external to the Release cannot be considered. *See Mid Rivers Mall, L.L.C. v. McManmon*, 37 S.W.3d 253, 255 (Mo.App. E.D. 2000) ("Where the parties have expressed their final agreement in writing and there is no ambiguity in the contract, the parol evidence rule requires that the court determine the intent of the parties *solely* from the "four corners" of the contract itself.")

Mock did not agree in the Release to give up his affirmative defenses against Walley in the lawsuit she initiated against him; neither does the Release purport to bind any other party besides the signatories Mock, Walley, and the Highway Patrol. The courts submission of the issue of comparative fault to the jury was not in error.

Point One is denied.

■ In Point Two, Walley argues the trial court erred in admitting evidence of the speed at which Walley drove on Highway 63 while responding to this emergency call "because the evidence was irrelevant and inadmissible in that the evidence that her vehicle reached 100–130 miles per hour on Highway 63 had no relevance as it was remote and not continuous and was adduced solely to inflame and prejudice the jury." Walley argues she was prejudiced by the admission of this evidence, which is proven by the inadequate damages awarded and the ninety percent (90%) fault assessed against Walley.[5]

■ Before we proceed, we address La Plata's argument that Walley has failed to preserve this issue for appeal. During Walley's counsel's examination of Walley on the stand, counsel asked the court at the bench, "So, it's still the Court's ruling that the speed on Route E or Route 63 is relevant?" The court responded in the affirmative. Then counsel stated, "Can I have the same objection that I'm preserving my objection to that and that I am not waiving it?" Again, the court answered in the affirmative. "All that is required of any objection to evidence is that the objection be sufficiently clear and definite [so] that the trial court will understand the reason for the objection ..." *Estate of Gross v. Gross*, 840 S.W.2d 253 (Mo.App. E.D.1992) (quoting *Williams v. Bailey*, 759 S.W.2d 394, 397 (Mo.App.1988)). We find that Walley did preserve her objection to the introduction of evidence of Walley's speed on Highway 63, insofar as the objection was to the relevance of the evidence. The trial transcript shows that the judge and both parties were well aware of the objection Walley had concerning the admission of this evidence.[6] The court and La Plata both understood that Walley had an objection but that the court had ruled that this evidence was admissible at trial and the court and the parties agreed to

---

**5.** While the accident in question occurred on highway E, and there was significant testimony regarding her speed on that highway, the evidence at issue is the speed at which Walley was traveling on highway 63, before she turned onto highway E.

**6.** Walley did file a motion *in limine* which addressed evidence concerning Walley's speed *as seen by firefighters immediately preceding the accident* but that motion was not broad enough to specifically address the evidentiary issue in dispute in this point, which is the relevance of Walley's speed earlier on a different highway.

grant Walley a continuing objection as to the relevance of the evidence.[7] We find that the alleged error was sufficiently preserved.

 La Plata further argues that Walley should be prevented from objecting to the admission of the evidence because she was the first to introduce evidence of her speed on Highway 63 at trial. La Plata argues that

> [a] party who opens up a subject is held either to be estopped from objecting to its further development or to have waived his right to object to further development." *State of Missouri, ex rel. Missouri Highway and Transportation Commission v. Matula,* 910 S.W.2d 355, 362 (Mo.App.1995). Cross-examination as to matters first raised by the appellant during direct examination is not a proper basis for reversible error. *See State v. Glessner,* 918 S.W.2d 270, 281 (Mo.App.1996).

*Stoup v. Robinson,* 933 S.W.2d 935, 938 (Mo.App. W.D.1996). The purpose behind the rule is to prevent a party from eliciting some evidence to his favor but then being able to object and prevent his opposing party from cross-examining and inquiring further into that evidence in order "to refute the adverse inferences which might arise from the incomplete nature of the evidence he introduced." *Watson v. Landvatter,* 517 S.W.2d 117, 122 (Mo. banc 1974). At trial, it is clear that Walley wished to prevent the evidence of her speed on Highway 63 from being introduced at trial *at all* and only proceeded to address it after the court noted her continuing objection to the evidence but ruled

the evidence was relevant and would be allowed into the trial.

Walley argues that if the record is clear that the evidence will be admitted over a party's objection, that objection should not be waived by the party eliciting such evidence during their case-in-chief to take the "sting" out of its admission by the opposing party. Based on our holding below that it was not an abuse of discretion for the trial court to have admitted this evidence, we do not have to reach this issue.

 Therefore, we proceed to the merits.

The admissibility of evidence lies within the sound discretion of the trial court and will not be disturbed absent abuse of discretion. *Kansas City v. Keene Corp.,* 855 S.W.2d 360, 367 (Mo. banc 1993). "The trial court abuses its discretion when its ruling is clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration." *Oldaker v. Peters,* 817 S.W.2d 245, 250 (Mo. banc 1991) (citation omitted). *Nelson v. Waxman,* 9 S.W.3d 601, 603–04 (Mo. banc 2000). "For evidentiary error to cause reversal, prejudice must be demonstrated." *State v. Reed,* 282 S.W.3d 835, 837 (Mo. banc 2009).

Evidence must be both logically and legally relevant to be admissible. *State v. Ross,* 292 S.W.3d 521, 527 (Mo.App. W.D.2009). Logically relevant evidence tends to make the existence of any fact that is of consequence to the determination of the action more probable or less

---

7. During *voir dire* the trial court sustained Walley's objection to questions regarding her speed on highway 63. However, La Plata acknowledged at oral argument that this issue had been subsequently addressed by the parties and the trial court in chambers at some point between *voir dire* and the point at which Walley made the limited record that we have on the issue in open court. No transcript of the in chamber's discussion has been provided to this Court.

probable than it would be without the evidence, or ... tends to corroborate evidence which itself is relevant and bears on the principal issue of the case. *Id.* at 527–28 (citation omitted). Evidence is legally relevant if its probative value outweighs the dangers of unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness. *Id.* at 528.

*State v. Rios,* 314 S.W.3d 414, 421 (Mo. App. W.D.2010) (internal quotation marks omitted).

Walley argues that a more specific inquiry must be made as this evidence regards evidence of the speed of Walley's vehicle prior to the accident, but not at the time of the accident. In such cases this Court has held that the salient factors are materiality, relevancy and remoteness. *See Stapleton v. Griewe,* 602 S.W.2d 810, 814 (Mo.App.W.D.1980). Further, in order to be admissible, the speed must be connected to the speed of the vehicle right before collision; that is to say that there should be a degree of continuity as the speed of a vehicle is not continuous. *See State ex rel. Missouri Highways and Transp. Comm'n v. Legere,* 706 S.W.2d 560, 567 (Mo.App. S.D.1986).

■■■ Remoteness and continuity of speed are important factors insofar as the evidence of a vehicle's prior speed is being admitted as relevant to prove the speed of the vehicle *upon collision. See Stapleton,* 602 S.W.2d at 813. The court in *Stapleton,* when it elaborated the above principles, was specifically addressing "the question of the admissibility of prior speed of an automobile as probative on the issue of speed of an automobile *at the time of collision." Id.* (emphasis added). Such was not the purpose of the evidence in this case, which Walley recognizes in her brief. At trial, both parties presented evidence from experts opining as to the speed at which Walley was travelling immediately preceding the collision. La Plata presented its experts, one of whom testified he believed Walley was travelling 81 miles per hour and the other testified Walley's speed to be between 76 and 85 miles per hour just before the collision. If Walley's speed on highway 63 had been admitted as relevant to show her speed just before the collision, the remoteness in time and location with respect to the scene of the accident would weigh against the admission of the evidence. However, in this case, there is no question the evidence of Walley's speed on Highway 63 was *not* used to prove her speed immediately prior to the collision. The question then becomes whether the evidence was relevant to any other permissible purpose.

At trial, *prior to* Walley's objections concerning the evidence regarding her specific speed on Highway 63 on the way to the accident scene, Walley offered significant evidence concerning Walley's conduct on the way to the accident scene. For example, Walley's counsel in his opening statement told the jury that "consistent with her training [Walley] got in the car and went as quickly as she could to the scene, because in crisis like she was told minutes mean life." Walley testified on direct examination that police officers are able to exceed the speed limit so long as their lights and siren are on and they do it safely. She also testified concerning a general order that lists various factors a police officer should consider when choosing whether to exceed the speed limit on the way to an accident. Walley testified that she heard the call on the radio, concerning the accident to which she responded, and that she knew there was a head injury involved and that she believed no emergency responders were on the scene, that she felt she should get there as quickly as possible. All of this evidence was

elicited *prior* to the inquiry by Walley's attorney to the court on its ruling regarding the admissibility of her speed on Highway 63 and the court's allowing Walley's continuing objection to the evidence. It was at this point that Walley's counsel chose to delve more specifically into Walley's speed on Highway 63 and Walley testified she traveled between 100 and 120 miles per hour on Highway 63 on her way to the accident. Walley further testified that she encountered no problems on Highway 63 and that her car was specially equipped for travelling at high speeds.

While it may not have been an abuse of discretion for the trial court to have sustained the objection to the evidence in question, we likewise cannot conclude under the facts of this case that the trial court was not acting within the broad discretion allowed when it admitted the evidence regarding Walley's speed on Highway 63. *See Nelson*, 9 S.W.3d at 603–04. To the extent that such evidence was relevant it was relevant to give the jury a complete picture of the course of events leading up to the accident and we cannot say that such a determination shocks our sense of justice or indicates a lack of careful consideration. *See Nelson*, 9 S.W.3d at 603–04.

■ To the extent that it would have been error to allow the admission of this evidence, reversal is still not warranted because Walley has not shown that the alleged error affected the outcome of the case and she was thereby prejudiced by its admission. *See Alberswerth v. Alberswerth*, 184 S.W.3d 81, 100 (Mo.App. W.D. 2006). Walley asserts that prejudice was shown "by the inadequate verdict and 90% fault assessment." Such a bare assertion is insufficient. "[T]he amount of the verdict, by itself, does not constitute enough proof to establish that the verdict was the result of bias, passion, or prejudice." *Montgomery v. South County Radiolo-* *gists, Inc.*, 168 S.W.3d 685, 692 (Mo.App. E.D.2005) (citing *Lopez v. Three Rivers Elec. Co-op., Inc.*, 92 S.W.3d 165, 175 (Mo. App. E.D.2002)). There was conflicting evidence presented at trial by the parties' respective experts as to the actual injuries suffered by Walley arising from the accident and the seriousness and permanent nature of those injuries. La Plata presented evidence that suggested that Walley was in fact able to return to work, contrary to Walley's claim. The evidence at trial showed that Walley was traveling at a minimum of 70 miles per hour and possibly up to 85 miles per hour as she crested a blind hill, on a road with which she was unfamiliar, immediately preceding the collision. The evidence that was presented with respect to Walley's speed on Highway 63 was separated from the issue of her speed on Route E, and Walley was able to extensively testify regarding the ability of a police officer to exceed the speed limits when she believes it is necessary. She testified as to the factors she considered when making such a decision and to her vehicle's capability to handle such speeds. Further, neither party argued in closing arguments that the evidence of her speed on Highway 63 had any bearing on the accident or the speed at which she was traveling at the time of the accident. We do not believe that Walley's bare assertion she was prejudiced because the verdict that she received is somehow "inadequate" is sufficient under these facts to show prejudice.

Point Two is denied.

### Conclusion

The Judgment of the Circuit Court of Adair County is hereby affirmed.

All concur.